Case 6:17-cv-00054-NKM-RSB   Document 28   Filed 01/25/19   Page 1 of 10
Pageid#: 3049

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
01/25/2019
JULIA C. DUDLEY, CLERK
BY:   s/ F. COLEMAN
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CAROLYN N.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:17CV54 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Carolyn N. ("Carolyn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Carolyn alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) consider all the relevant medical evidence; and (2) determine her RFC. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Carolyn's Motion for Summary Judgment (Dkt. No. 19) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 23).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Carolyn failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Carolyn filed for DIB on March 21, 2013, ultimately claiming that her disability began on February 28, 2013, due to fibromyalgia, sleeping disorder, anxiety, limited sitting and standing, and right leg numbness.[3] R. 268, 284. Carolyn had initially claimed her disability began on February 23, 2018, but, at the hearing before the ALJ, amended her onset date to February 28, 2013. R. 83, 268. Carolyn's date last insured was March 31, 2013; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 283, 80; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Carolyn's applications at the initial and reconsideration levels of administrative review. R. 148–73, 175–91. On October 22, 2015, ALJ Brian P. Kilbane held a hearing to consider Carolyn's claims for DIB. R. 102–27. Counsel represented Carolyn at the hearing, which included testimony from vocational expert Barry Hensley. On January 5,

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Carolyn was 51 years old on her date last insured, making her a person closely approaching advanced age under the Act. R. 148.

2

2016, the ALJ entered his decision analyzing claims under the familiar five-step process[4] and denying her claim for benefits. R. 83–91.

The ALJ found that Carolyn was insured at the time of the alleged disability onset date and that she suffered from the severe impairments of disorders of the back, fibromyalgia, and osteoarthrosis and allied disorders.[5] R. 85. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 86–87. The ALJ found that, regarding her mental impairments, Carolyn had mild restrictions in her activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. R. 86.

The ALJ concluded that Carolyn retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 87. Specifically, the ALJ found that Carolyn can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. Id. The ALJ determined that Carolyn was capable of performing her past relevant work as a short order cook and waitress. R. 90. In the alternative, Carolyn could also perform other jobs that exist in significant numbers in the national economy, such as housekeeper, cashier, and counter clerk. R. 91. Thus, the ALJ determined that Carolyn

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] The ALJ also found that Carolyn's medically determinable impairments of obstructive sleep apnea, hypertension, diseases of the esophagus, affective disorders, and anxiety disorders, were non-severe. R. 85.

3

was not disabled. Id. Carolyn appealed the ALJ's decision and the Appeals Council denied her request for review on May 8, 2017. R. 1–4.

## ANALYSIS

Carolyn alleges that the ALJ failed to properly: (1) consider all the relevant medical evidence, specifically medical evidence outside the period between her alleged onset date and date last insured; and (2) determine her RFC, including posing an appropriate hypothetical question to the vocational expert.

### A. Medical History

1. <u>Physical Impairments</u>

On February 18, 2013, immediately prior to her alleged onset date, Carolyn presented to the emergency room complaining of dizziness while at work cleaning houses and was admitted to the hospital. R. 607. At her discharge examination on February 21, 2013, Carolyn had full range of motion in her extremities and was released to return to work on February 25, 2013. R. 609. On Carolyn's amended alleged disability onset date of February 28, 2013 she underwent carpal tunnel release surgery on her left hand.[6] R. 689. Carolyn had a follow-up examination from her February 2013 carpal tunnel release surgery on March 13, 2013, and her medical provider indicated she was doing well and referred her to physical therapy. R. 1491. At hand therapy appointments in April 2013, the physical therapist noted "no problems with motor function of extremities" despite continuing complaints of pain. R. 1925.

Carolyn was also diagnosed with fibromyalgia prior to her alleged onset date, and had office visits at the Bedford Free clinic in March, April and June 2013, where she was "doing well

---

[6] Carolyn had a history of complaints of back pain, as well as numbness in her left hand predating her date last insured, and had undergone a previous carpal tunnel release on her right hand in 2006, as well as a lumbar fusion in 2011. R. 435, 689.

4

[with] no complaints" in April, but complained of being "tired and achy" in June. R. 749, 750, 1186.[7]

### 2. Medical Opinion Evidence

In August 2014, R.S. Kadian, M.D., a state agency doctor, reviewed the record on reconsideration and found that Carolyn was capable of a limited range of light work. R. 187–90. Also in August 2014, state agency psychologist, Stonsa N. Insinna, Ph.D, LCP, reviewed the record and found non-severe affective and anxiety disorders, with mild restrictions in activities of daily living, and no difficulties in maintaining social functioning, maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. R. 184–85.

### B. Medical Evidence Considered by the ALJ

Carolyn argues that the ALJ erred by not considering all of the relevant evidence, specifically evidence outside of the time between her alleged onset date of February 28, 2013 and her date last insured of March 31, 2013. In support, Carolyn asserts that because her impairments are "degenerative in nature" and she carried diagnoses of these impairments prior to her alleged onset date, medical records prior to her alleged onset date were relevant. Pl's. Br. at 8, Dkt. No. 20. Carolyn also points to medical procedures performed following her date last insured, including procedures in 2015 involving her left wrist, as well as her spine, arguing these procedures show not "new or worsening conditions that would lead to disability after the [date last insured] but [instead] evidence of the same conditions from 2013 onward." Id.

As a threshold matter, to qualify for DIB, Carolyn must establish disability on or before her date last insured of March 31, 2013. See 42 U.S.C. § 423(a); Blalock v. Richardson, 483 F.2d 773, 775, n. 6 (4th Cir. 1972) (finding that the decision not to award disability benefits was

---

[7] The record shows that Carolyn cancelled her visit scheduled for February 27, 2013. R. 751.

supported by substantial evidence and noting that, while claimant was likely "now disabled" there was "no positive evidence of this until . . . six years after her insured status expired"). Thus, as stated by the ALJ, "[this] decision [] only covers the [] relevant time period."[8] R. 88.

Here, substantial evidence supports the ALJ's determination that Carolyn did not become disabled during the required time period, i.e., before her insured status expired. Further, the ALJ did not determine, and I will not independently review, whether the medical record suggests that Carolyn was disabled at the time of the ALJ's decision in January 2016. R. 88 (The ALJ notes, "Carolyn's present state is not a concern with respect to [DIB], which is the only type of benefit available to [Carolyn] under this claim."). Evidence of record regarding the insured period show that Carolyn had carpal tunnel release surgery, was doing well at a follow up exam, and participated in physical therapy, where the notes showed no issue with motor functions in her extremities. R. 689, 1491, 1925. The ALJ noted that, in follow up visits shortly after the insured period, in July 2013, she had full range of motion in her wrist, could make a full composite grip, and her opposition was intact. R. 89. The ALJ also acknowledged that Carolyn carried a fibromyalgia diagnosis, but noted that close in time to the relevant time period, she was "doing well with no complaints" and that "the progress notes appear to show that [her] alleged symptoms were managed conservatively with routine office visits and medications." R. 89.

Finally, contrary to Carolyn's claim, the ALJ did discuss evidence outside the time period from February 28, 2013 to March 31, 2013. The ALJ noted that the Carolyn had a carpal tunnel release surgery in 2006, and lumbar fusion surgery in 2011, both "years prior to [her] amended alleged onset date." R. 88. The ALJ also specifically referenced Carolyn's cervical surgery in

---

[8] While the Administrative Record is lengthy, totaling 2,883 pages, only a small number of the medical records pertain to the relevant period from February 28, 2013, the alleged onset date, through March 31, 2013, the date last insured.

September 2013, which treatment continued into 2015.[9] However, the ALJ accurately stated that Carolyn "must establish disability between February 28, 2013, her alleged onset date, and March 31, 2013, her date last insured, in order to be entitled to [DIB]." Id. As acknowledged by the ALJ, "this is an extremely narrow window in which to prove disability." Id. Here, there is simply no indication that Carolyn's impairments had progressed to disabling proportion by March 31, 2013; in fact, the ALJ specifically found they did not. Further, Carolyn has pointed to nothing in the record that showed she was disabled during the relevant period. Indeed, no treating physician or other doctor has suggested that Carolyn was disabled on or before March 31, 2013, and Carolyn was apparently working as a housekeeper through mid-February 2013. R. 607, 609.

**C. RFC**

Carolyn argues that the ALJ's RFC was not supported by substantial evidence. Specifically, she complains that the ALJ did not appropriately consider her complaints of pain in her left arm, resulting in a hypothetical question to the vocational expert that that did not include the "pain and grip difficulties [she] experienced . . . in her left arm." Pl.'s Br. at 9, Dkt. No. 20. However, these arguments amount to disagreements with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. An RFC is the most a claimant can still do despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all the relevant evidence in the claimant's record

---

[9] I recognize that medical evidence that post-dates a claimant's date last insured may be considered where it is relevant to prove disability prior to that date. However, the post-dated medical evidence must provide a sufficient linkage with the claimant's condition prior to the date last insured, which has not been shown here. See Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 340–41 (4th Cir. 2012).

7

and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015). Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Carolyn's argument that the ALJ failed to consider her complaints of pain and difficulty gripping in her left arm are belied by the record, where the ALJ specifically noted Carolyn's

8

allegations that she "has no functional use of her left hand or arm" and can lift no more than five pounds with her right hand and "even less with her left hand." R. 87. The ALJ also acknowledged that in July 2013, Carolyn's wrist showed "some tenderness, mild edema, and mild atrophy." R. 89. However, the ALJ concluded that Carolyn's course of treatment, including a carpal tunnel release surgery performed without complications, good motor function with hand therapy, and full wrist range of motion, combined with limited objective findings during the relevant period, did not support Carolyn's claims of disabling pain. R. 88–89. The ALJ also gave great weight to Dr. Kadian, who found that Carolyn was capable of a limited range of light work. R. 89.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a sufficient summary and explanation of Carolyn's medical records, her hearing testimony, and the ALJ's conclusions. R. 87–91. I find that the ALJ's RFC findings are supported by substantial evidence and that the ALJ presented an appropriate question to the vocational expert.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.

Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  January 25, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge